**UNITED STATES v. PETERSON et al. THE LOUISA D. THE MATTIE T. DYER. THE J. EPPINGER.**

Circuit Court of Appeals, Ninth Circuit. October 29, 1928.

Nos. 5506, 5508, 5509.

Geo. J. Hatfield, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal.

J. N. Gillett and H. H. North, both of San Francisco, Cal., for appellees.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge. The appellees recovered a judgment in the court below against the appellant in the sum of $19,114.32, the same to be apportioned in specified sums on behalf of the owners of the American schooner Louisa D, their heirs and legal representatives, for damages sustained in the year 1893 by the interference of the United States with the operation of said schooner on a voyage undertaken with the intention to hunt fur seals in the Bering Sea.

It is agreed that the questions presented on the appeal are but two: First, whether as matter of law the appellees sustained the burden of proof which rested upon them to show that a voyage to the Bering Sea was undertaken; and, second, whether as matter of law there was interference with the voyage by the United States on a charge of unlawful sealing.

On February 1, 1893, the Louisa D, an American vessel with a crew of 21, cleared from the port of San Francisco bound on a hunting voyage in the North Pacific Ocean as the master might direct. In the crew were seven regular seal hunters, and the vessel carried six regular hunting boats and one stern boat. The intention was first to hunt off the coast of Japan, and later enter the Bering Sea for seal hunting; it being stipulated that the pelagic fur seal hunting season in that sea begins about July 1st and extends to the middle of September. In the meantime, on April 21, 1893, the commander of the United States naval forces in the Bering Sea received orders to patrol the sea with his fleet, and to warn all sealing vessels that they would be seized if they entered the Bering Sea for the purpose of sealing, to forcibly prevent the taking of seals during the season of 1893, and to seize with or without warning all sealing vessels within said waters which carried on board implements for taking seals.

But little difficulty is met in disposing of the first question presented by the record. Two members of the crew, whose testimony is not contradicted or impeached in any way, supported the finding of the trial court that on February 1, 1893, the schooner cleared for a fur seal hunting voyage to the North Pacific Ocean and Bering Sea, or elsewhere as the master might direct. Capt. Burtis, of the crew, testified that when he signed on he knew that the intention was to go to Bering Sea. Capt. Caughell testified that he was a seal hunter on the Louisa D, bound on a sealing voyage from San Francisco to Bering Sea. He said: "When I was engaged to hunt that year it was said we were to hunt from San Francisco up the coast here to Bering Sea and in Bering Sea, absolutely in Bering Sea."

As to the second question, it is to be observed that the statute of June 7, 1924 (28

USCA § 52), provides for the payment of damages or loss "occasioned by or resulting from the seizure, detention, sale or interference with their voyage by the United States of vessels charged with unlawful sealing in the Bering Sea." There can be no doubt that there was interference by the government with the contemplated voyage of the Louisa D to the Bering Sea and seal hunting therein. It is true that the vessel received directly no warning from any officer of the United States, but it is undisputed that, while engaged in the spring hunting off the Japanese coast, the vessel got into a typhoon and put into Hakodate to replace the loss of her small boats, and that there the master and some members of the crew saw posted the proclamation, issued by the government of the United States, to the effect that Bering Sea was closed to seal hunting, and that if any vessel went into said sea she would be subject to seizure. The result was that the vessel abandoned her intended voyage to Bering Sea and returned to her home port. We entertain no doubt that the act of the government, in its display of armed naval forces, and patrolling Bering Sea with its gunboats and revenue cutters, and in posting such proclamations, was an active interference with the project of the Louisa D to hunt seals in the Bering Sea.

It is suggested on behalf of the appellant that the case is similar to the Ladd Case (No. 5084) 24 F.(2d) 942, decided by this court. That was a case of a "hunting and fishing" voyage without a named destination. It was held, in view of the master's proven knowledge of the attitude of the government toward seal hunting in Bering Sea in previous years, it would not be presumed, in the absence of evidence to the contrary, that the intended destination was Bering Sea, and that there was no proof of a broken voyage. Therein the Ladd Case differs from the case at bar.

Some difficulty is met in determining the significance of the phrase "charged with unlawful sealing" as expressed in the act. We think it clearly does not contemplate that a formal charge must be lodged against a vessel before it can be said to have been interfered with, and it is believed that a formal proclamation of the government that all vessels engaged in fur sealing in Bering Sea will be subject to seizure is, within the meaning of the act, a charge of unlawful sealing in those waters, whenever it is brought to the attention of a vessel which has entered upon a voyage with such intention, and that it is not necessary, in order to obtain the restitution and reparation contemplated by the act of Congress, to show a boarding of the vessel or a specific accusation against it of illegal sealing, and that in view of the purpose of the act to recompense citizens of the United States who had been wrongfully deprived of property and the opportunity to make profits in lawful ventures, its language should receive a construction in harmony with its purpose, so as to afford its benefits to all who were injured by the acts of the government, including all who, on account of the declared attitude of the government, abandoned voyages which had actually been undertaken for seal hunting in Bering Sea, and thereby incurred loss and damage.

The judgment is affirmed.

### The Mattie T. Dyer, No. 5508.

In January, 1893, the American schooner Mattie T. Dyer, with a crew of 18, cleared from the port of San Francisco for the North Pacific Ocean and Bering Sea to hunt seals. Early in June of that year, while in the port of Hakodate for the purpose of shipping fur skins already captured and obtaining provisions for continuing the voyage into Bering Sea, the master and crew were advised of the proclamation of the United States forbidding fur sealing that year in the Bering Sea. By reason thereof the voyage of the schooner was broken, and she was compelled to abandon her project of sealing in Bering Sea. A judgment for $13,311.62 was entered for the benefit of the administrator and the heirs of the estate of the deceased owner.

On appeal this case presents questions similar to those that were before us in the case of the schooner Louisa D. The finding of the court below, on a trial had before the court, a jury trial having been duly waived, was that the appellant unlawfully and wrongfully interfered with the voyage of the Mattie T. Dyer. The finding was supported by the testimony of Peter Hammel, who testified that he was a seal hunter on the Mattie T. Dyer on the voyage in question, "out of San Francisco bound for Bering Sea." He testified: "We hunted on the coast of Japan first. I think we cleared from San Francisco in January, carrying six regular hunting boats and six hunters." He testified, further, that the purpose of the voyage was seal hunting upon the open ocean and Bering Sea, "mostly in Bering Sea"; that at Hakodate "the captain told us that Bering Sea had been closed. We did not hear it from any other source. He said the sea was closed by the government of the United States. We did not go into Ber-

ing Sea for fear of being seized. There was no reason, other than the information obtained in Japan, that kept us out. We went to the Shumigan Islands and then home. When I was engaged to hunt for the season, it was expected to go to Bering Sea; that was where we sailed for." We think the evidence was sufficient to sustain the finding of the trial court.

It is contended on behalf of the appellant that no interference was shown, and that there was no specific charge of illegal sealing against the Mattie T. Dyer. To that contention we think the reasoning in our disposition of the case of the Louisa D is applicable.

The Schooner J. Eppinger, No. 5509.

On February 24, 1893, the American schooner J. Eppinger was cleared at the port of San Francisco for a hunting and fishing voyage in the North Pacific Ocean. A judgment was rendered for her owners, their heirs or legal representatives, in the sum of $17,-559.65. A jury trial having been by writing duly waived, the court below found the fact to be that the schooner was bound on a hunting voyage to the North Pacific Ocean and Bering Sea, and that the appellant unlawfully and wrongfully interfered with said voyage to the damage of the owners.

The widow of the managing owner testified that she was familiar with her husband's business, and frequently took charge of it in his absence; that in 1893 he discussed with her the voyage of the schooner, and that the voyage was intended for the North Pacific Ocean and Bering Sea, to hunt seals, first along the coast of Japan, and in the summer months to follow the seals into the Bering Sea, and that the vessel was fitted out to go to Bering Sea; that it was expected that the trouble over the seal fisheries would be over.

Higgins, a witness for the plaintiff, testified that he was a hunter on the J. Eppinger, and that he shipped as a seal hunter to hunt in the North Pacific Ocean and Bering Sea; that the plan was to go into Bering Sea after hunting on the coast of Japan; that they went into Hakodate; that it was the chief topic of conversation there that they could not go into Bering Sea, for the reason that it was closed. Said the witness: "We did not go into Bering Sea because the captain said they had orders in Hakodate not to go in because the sea was closed. The captain went ashore in Hakodate and got mail; he told us all he could do was to hunt up the coast and go home; that he had received orders that Bearing Sea was closed."

De Fries, another seal hunter on the J. Eppinger, stated the reason why the schooner did not enter Bering Sea was that "the captain told us that we were notified by the government not to go in. This was at Hakodate; we heard it from every one that the sea was closed. The captain told us he couldn't take any chances about being seized. We signed articles to go hunting up the coast and Bering Sea."

That the voyage was interfered with is established, we think, upon the considerations expressed in the foregoing discussion of the case of the Louisa D.